Ward and Butterfield vs. The Milwaukee & St. Paul Railway Co.

## WARD and BUTTERFIELD vs. THE MILWAUKEE AND ST. PAUL RAILWAY COMPANY.

*Negligence, contributory.*

1. The owner of a warehouse adjoining a railway track and of goods stored therein, is bound, as against the railway company, only "to use what would be ordinary care and prudence under the circumstances, to avoid injury" to such warehouse and goods by fire from the locomotives on the road.

2. In an action for such injury, brought by such owners against the railway company, it was error to instruct the jury that plaintiffs could not recover unless their warehouse was "in such condition as *very* prudent and cautious men would generally keep their own property in under like circumstances."

3. What constitutes ordinary care in respect to property, depends upon the value, character and situation of the property in question; the question in each case being, what care would usually be exercised by men of ordinary prudence, in respect to property of the same kind, and similarly situated.

4. *Dreher v. Fitchburg* 22 Wis., 675, as to the degrees of negligence, approved; and *Potter v. Railway Company*, 21 id., 377, modified or explained.

APPEAL from the *Dane* County Circuit Court.

Action to recover the value of a warehouse and its contents, which had been destroyed by a fire alleged to have occurred through the negligence of the defendant.

The plaintiffs were the owners of a warehouse standing upon the depot grounds of the defendant, at Helena, in the county of Iowa, adjoining to and south of the side track of the railroad, which is south of the main track. The warehouse was a wooden building, on stone abutments, and stood with its north end towards the track, its platform reaching within 3 1-2 or 4 feet of the track. A woodpile belonging to the defendant extended from the warehouse westward.

About 10 o'clock on the night of the 2d of November, 1868, a regular freight train of the defendant, going west, stopped on the side track, near and a little west of the plaintiffs' warehouse, and remained there about one hour, and then backed past the warehouse to the main track and went on its way. About one o'clock A. M., the warehouse was discovered to be on fire, and, with its contents, was soon consumed. There was evidence that the engine of the freight train emitted many sparks when it came in, and more when backing out from the side track; that such sparks were carried in the direction of the warehouse and of the depot, further east on the same side of the track, some of them lodging on the platform of the depot and being swept off by the night watchman; and that the ashpan of the engine was emptied of ashes and coals some two to four rods from the warehouse. There was also evidence that the fire box of the engine was small for a freight engine, rendering it somewhat difficult to keep up steam, and causing it, when laboring hard, as in backing out a heavy train, to emit more sparks than an engine with a larger fire box. There was no positive evidence to show how the building took fire.

The evidence also showed that the plaintiffs built and occupied their warehouse on the depot grounds by permission of the company, paying no rent or other consideration for the privilege; that the attention of one of them was called to the sparks flying while the engine was moving or standing near the warehouse, but he did not go near it, or take any precaution to prevent their setting fire to the building; and that some chaff and bits of straw, which had been cleaned out of dirty grain and would readily ignite, were on the floor of the warehouse near the north door at the time of the fire.

In its charge to the jury, the court refused to give the following instructions asked by the plaintiff, viz.: "Second. Were the plaintiffs guilty of contributory negligence? Upon this point I charge you that the plaintiffs were only required to use what would be ordinary care and prudence under the circumstances, to avoid injury." "Fourth. Upon all the evidence given in this case, you will decide whether the agents and employees of the defendant at Helena, did use the utmost care they could, under the circumstances, to prevent the communication of fire from their locomotives to the plaintiffs' property." The court then gave the following as its second instruction: "You will consider all the evidence in relation to the warehouse and its contents, and the conduct of the plaintiffs on the occasion of the fire and previous; and say whether the plaintiffs were guilty of any carelessness or neglect which contributed to the injury. Slight negligence is the omission of such care as persons of extraordinary prudence and foresight are accustomed to use. If the plaintiffs' warehouse was in such condition as very prudent and cautious men would generally keep their own property in, under like circumstances, then the plaintiffs have not been guilty, in that respect, of contributory negligence."

As these embrace all the questions passed upon by the court, it is unnecessary to give the remainder of the charge.

The jury found for the defendant, and a motion for a new

trial having been overruled, judgment was entered dismissing the complaint with costs, from which plaintiffs appeal.

*A. S. Sanborn*, for appellants, argued that the plaintiff was only held to the exercise of ordinary care and prudence; that the determination of the question of liability did not depend *absolutely* on the absence of *all* negligence on the part of the plaintiffs, but more upon the relative degree of care exercised by both, citing *Mil. & Chi. R. R. Co. v. Hunter*, 11 Wis., 160; *Hassa v. Junger*, 15 id., 598; *Spencer v. Railroad Co.*, 17 id., 487; *Davis v. R. W. Co.*, 18 id., 175; *Dreher v. Town of Fitchburg*, 22 id., 675; *Martin v. R. R. Co.*, 23 id., 437; *Kavanaugh v. City of Janesville*, 24 id., 618; that the refusal of the court to give the fourth instruction asked by the plaintiff, when taken in connection with other portions of the charge, left the defendants without any responsibility; that the question of contributory negligence ought to have been left to the jury unembarrassed, citing *Spencer v. Milw. & Prairie du Chien R. R. Co.*, 17 Wis., 487; *Dreher v. Town of Fitchburg*, 22 id., 675; *Martin v. Western Un. R. R. Co.*, 23 id., 437; *Ferro v. Buffalo & State Line R. R. Co.*, 22 N. Y., 209; *Brown v. N. Y. Central R. R. Co.*, 32 N. Y., 597; *Field v. N. Y. Central R. R. Co.*, 32 N. Y., 339; *Sheldon v. Hudson River R. R. Co.*, 4 Kern., 218; *Hugett v. Phil. & Reading R. R. Co.*, 23 Pa. St. 373; Redfield on Law of Railways, Vol. 1, chap. 17, pages 432 to 464; and that the verdict was contrary to law and the evidence.

*John W. Cary*, for respondent, contended that the plaintiffs having as a matter of favor and without consideration, been permitted to place their building on the defendants' ground, near the tracks, where it was necessarily greatly exposed to fire, were bound to exercise, not mere ordinary care, but the highest degree of care to prevent injury from that cause; and that the second instruction given fully and fairly, stated the doctrine of contributory negligence.

Dixon, C. J.    The court erred in refusing the second instruction asked by the plaintiffs.    The idea in the mind of the court evidently was, that the plaintiffs were bound to exercise extraordinary care, or use the highest degree of diligence, or they could not recover — that slight negligence on their part would defeat the action.    This appears from the language of the instruction which immediately followed, and is given as second, and is set forth in the reporter's statement of the case.

The rule of law is, not that slight negligence on the part of the plaintiff will prevent a recovery in such cases, but it is, as stated in the request to instruct which was refused, that it is only the want of ordinary care and prudence, under the circumstances, to avoid the injury, which the law imputes to the plaintiff as a fault contributing to it, and which will bar his remedy or right to recover damages on account of it.    This question was fully discussed by Mr. Justice Paine, in *Dreher v. the Town of Fitchburg*, 22 Wis., 675, where the very point was presented. And such is the rule of law, we believe, in every court where the doctrine of the different degrees of negligence, as slight, ordinary, and gross, is maintained as we think that doctrine generally is.    Story on Bailments, §§ 11 to 17 and cases cited. Shearman and Redfield on negligence, §§ 16, 17, 18; the same, §§ 29, 23, and authorities cited.    It seems unnecessary after the able and thorough examination which the question received in *Dreher v. the Town of Fitchburg*, to extend our remarks upon it here, or upon the impropriety of refusing to give the instruction which was asked.    Slight negligence is there defined in almost the precise words in which it was defined by the court below, in the instruction here given, and it was there held not to be error to refuse an instruction that slight negligence on the part of the plaintiff would defeat the action.    It was distinctly said that such was not the law, but only that ordinary negligence, which is the want of ordinary care, or of that degree of diligence which men in general exert in respect to their own concerns, would have that effect.    No extraordinary forecast or pru-

dence, nor such care as very prudent and cautious men would observe, is required in order to shield the plaintiff from the imputation of being the author of his own injury, it being otherwise shown to have proceeded from the wrongful or negligent act or omission of the defendant.

Ordinary care and prudence only are required for that purpose. Of course, what may constitute ordinary care under some circumstances, may not under others. This varies and is materially affected by the nature, situation, bulk, and value of the article or thing to be cared for, and by other facts and circumstances. Speaking upon this point in connection with the duties of bailees and their liability for the loss or destruction of property entrusted to their care, Judge STORY says : " A man would not be expected to take the same care of a bag of oats, as of a bag of gold ; a bale of cotton, as a box of diamonds, or other jewelry ; of a load of common wood, as of a box of rare paintings ; of a rude block of marble, as of an exquisitely sculptured statue. The value especially, is an important ingredient to be taken into consideration upon every question of negligence ; for that may be gross negligence in the care of a parcel of extraordinary value, which in a common parcel would not be so." Story on Bailments, § 15, and see also § 186. And the authors of the treatise on the Law of negligence, § 23, observe : " We have said that in estimating the degree of care which it is incumbent upon any person to use, the situation of such person, rather than the subject of his care, is to be taken into account. But in determining what amounts to any *specified degree of care* in each particular case, the thing to be taken care of, and the danger to which it is exposed, are the chief considerations. Thus, the same person may at the same time be entrusted with the charge of coals, books and diamonds, and be bound to *no more than ordinary care* in respect to any of them, yet the amount of thought, attention and pains which he would be required to bestow upon them respectively, would greatly differ. He would fully discharge his duty by putting the coal

in his bin, and in many parts of the country, would not need to lock it up; while it would generally be his duty to put the books in a good room, and the diamonds in some secret place, keeping a careful watch over them.

It is manifest from these considerations, that there may be and frequently are, situations and circumstances where the party bound to use only ordinary care would be required to be equally and even more watchful and attentive, and to take the same or greater pains and trouble to guard against injury, than would be necessary to constitute great care or great diligence in other situations and circumstances, where the latter is the degree of care and diligence demanded by law. The amount or kind of vigilance and caution requisite in each of the three degrees of care recognized by law, as slight, ordinary and great, is relative and governed by the circumstances of the particular case, and it is obvious that greater vigilance and caution may be needful in the exercise of ordinary care in some cases, than is required to constitute what is termed in the law great care in others. A person bound to only ordinary care of jewels or diamonds would be required to bestow more attention and exercise greater vigilance and caution than one bound to great care of wood or coal, or other such articles; but, notwithstanding, these differences arising from the nature or situation of the thing to be cared for, the degrees of care as defined by law, and which depend on the peculiar relations existing between the parties and the obligations arising therefrom, are not to be lost sight of or disregarded. A person charged with but ordinary care of a jewel or other article of great value, is not on account of the increased attention and watchfulness required, because of its value and of the necessity of guarding against theft or other loss, to be held to the use of extraordinary prudence and foresight, or of such care as persons of that character are accustomed to use, and the omission of which, constitutes slight negligence. He is not to be held responsible for losses happening from slight negligence or the want of great care, but only for those resulting from his

omission to use ordinary care according to the circumstances of the particular case.

In the present case, the situation of the plaintiff's warehouse, the materials and mode of its construction, the purposes for which it was used, its proximity to the railway track, and all circumstances enhancing the danger and risk of destruction from fire communicated by sparks from the locomotives which were constantly passing and repassing, may have been such as to have required great prudence and foresight on the part of the plaintiffs to prevent its taking fire from such cause, but still they were not required to exercise any greater prudence and foresight than persons of ordinary care or men of business and heads of families usually exhibit in their own affairs, or than such persons usually exhibit or would be expected to exhibit and use under the same or like circumstances. The latter is no doubt the true measure of the care which was required of the plaintiffs, and they were not required to exercise that degree of it indicated by the instruction which was given, namely, " such care as persons of extraordinary prudence and foresight are accustomed to use." It was error, therefore, to refuse the instruction which was asked, and for this the judgment must be reversed.

A single further observation appears to be necessary in order to correct an inaccuracy of expression found in *Potter v. The Chicago and Northwestern Railway Co.*, 21 Wis., 377, and which seems most likely to have led to the error here complained of. The closing sentence of the opinion in that case reads thus: " Negligence, proximate or contributing to the injury, however slight, prevents recovery." If by this is understood, as was doubtless intended, any neglect or omission, however slight, to use ordinary care, or a slight want of such care, contributing to the injury, the expression is quite right and no correction is required. But the language is not adapted to conveying this idea with accuracy. It is susceptible of a different construction, and that slight negligence as the lowest of the three de-

grees defined by law will defeat the action, which is incorrect. All this is explained in *Dreher v. The Town of Fitchburg*, pp. 677, 678, where it is said that the law does not attempt to measure how little or how greatly the plaintiff may have fallen short of using ordinary care, but that any failure in this respect or a slight want of such care, contributing directly to the injury, will forbid a recovery.

*By the Court.*—Judgment reversed, and a *venire de novo* awarded.