DANE COUNTY, Respondent, v. MCMANUS, Appellant.

*No. 284. Argued June 6, 1972.—Decided June 30, 1972.*
(Also reported in 198 N. W. 2d 667.)

416

For the appellant there was a brief by *Jack McManus* in pro per and *McManus & Haukom,* all of Madison, and oral argument by *Jack McManus.*

For the respondent there was a brief and oral argument by *Glenn L. Henry,* corporation counsel.

A brief amicus curiae was filed by *Robert W. Warren,* attorney general, and *John C. Murphy,* assistant attorney general, at the request of the court.

BEILFUSS, J.   Two issues have been presented by the parties:

1. Is sec. 18.03 of the Parking Ramp Ordinance (and also art. XVI, sec. 4 of the labor agreement) against the public policy of Wisconsin as expressed in ch. 111, Stats., "Employment Relations?"

2. Is sec. 18.03 (and also sec. 59.07 (1) (Lm), Stats.) either unconstitutional on its face or unconstitutional as applied?

The defendant's first contention is that sec. 18.03 of the Dane County Ordinances, and art. XVI, sec. 4 of the collective bargaining agreement, violate the legislative expression of public policy as set forth in ch. 111, Stats. More specifically, the defendant contends that sec. 111.01 (1) and (2) was not complied with when sec. 18.03 (Dane County Ordinance) was passed.

Sec. 111.01 (1), Stats., provides:

**"Declaration of policy.** The public policy of the state as to employment relations and collective bargaining, in the furtherance of which this subchapter is enacted, is declared to be as follows:

"(1) It recognizes that there are three major interests involved, namely: That of the public, the employe, and the employer. These three interests are to a considerable extent interrelated. It is the policy of the state to protect and promote each of these interests with due regard to the situation and to the rights of the others."

Sub. (2) of sec. 111.01, Stats., in relevant part, provides that the employer and employees:

". . . should not be permitted, in the conduct of their controversy, to intrude directly into the primary rights of third parties to earn a livelihood, transact business and engage in the ordinary affairs of life by any lawful

means and free from molestation, interference, restraint or coercion."

Defendant asserts that the general public interest was not adequately considered when sec. 18.03 (Dane County Ordinance) was passed, and that the ordinance and the collective bargaining agreement provision are invalid for that reason.

A more recent legislative expression of public policy dealing with state employees is cited by the defendant to support his position.

Sec. 111.80, Stats., provides:

"SUBCHAPTER V.
"STATE EMPLOYMENT LABOR RELATIONS ACT.
"111.80 **Declaration of policy.** The public policy of the state as to labor relations and collective bargaining in state employment, in the furtherance of which this subchapter is enacted, is as follows:
"(1) It recognizes that there are 3 major interests involved, namely: that of the public, the state employe, and the state as an employer. These 3 interests are to a considerable extent interrelated. It is the policy of this state to protect and promote each of these interests with due regard to the situation and to the rights of the others."

However, county of Dane contends that sec. 111.70 (2), Stats., allowed the Dane county employees to negotiate for the parking spaces in the Dane county parking ramp as a term or condition of employment.

Sec. 111.70 (2), Stats., provides:

"RIGHTS OF MUNICIPAL EMPLOYES. Municipal employes shall have the right of self-organization, to affiliate with labor organizations of their own choosing and the right to be represented by labor organizations of their own choice in conferences and negotiations with their municipal employers or their representatives on questions of wages, hours and conditions of employment, and such employes shall have the right to refrain from any and all such activities."

The legislative grant of bargaining rights to public employees includes the right to bargain for conditions of employment. Convenient and accessible parking space can be a proper item of concern in considering conditions of employment, especially for employees working downtown in urban areas.

In addition, the legislature has specifically granted county boards the right to provide for restrictive parking. Sec. 59.07 (1), Stats., provides:

"**General powers of board.** The board of each county may exercise the following powers, which shall be broadly and liberally construed and limited only by express language:

"(1) PROPERTY. (a) *How acquired; purposes.* Take and hold land sold for taxes and acquire, lease or rent property, real and personal, for public uses or purposes of any nature, including without limitation acquisitions for county buildings, . . ."

Also, sec. 59.07 (1) (Lm), Stats., provides:

"PARKING AREAS. Enact ordinances providing for establishing areas for parking of vehicles on lands owned or leased by the county; for regulating, permitting, prohibiting, restricting or limiting parking of vehicles on such areas or parts of such areas, including, without limitation by reason of enumeration, provision for parking in such areas or parts thereof for only certain purposes or by only certain personnel; for penalties for violations thereof, but not to exceed the sum of $50 for each offense; and for the enforcement of such ordinances."

Sub. (1) and par. (Lm) of sub. (1), sec. 59.07, Stats., provide legislative authority for the county to set aside certain areas of land and property owned by the county for the purpose of parking, including restricted parking. Such explicit state legislative authority clearly overrides the defendant's contention that sec. 18.03 of the Dane County Ordinances did not consider the public interest. Sec. 18.03 merely followed sec. 59.07 (1) and sec. 59.07 (1) (Lm) in setting aside a reserved parking area for

county employees. The state itself has given counties the authority to provide for restrictive parking on county owned land.

Aside from the statutory authority given to the county boards to provide for restricted parking, we believe that provision for reasonable restricted parking to municipal employees can be in the public interest to attract and keep employees and aid in timeliness and governmental efficiency.

We conclude that sec. 18.03 of the Parking Ramp Ordinance is not violative of statutory public policy.

The defendant makes two constitutional attacks on sec. 59.07 (1) (Lm), Stats. The first one is a contention that art. XIII, sec. 11 of the Wisconsin Constitution forbids the Dane county board from reserving parking spaces to Dane county employees.

The releveant part of art. XIII, sec. 11 provides:

"No person, association, copartnership, or corporation, shall promise, offer or give, for any purpose, to any political committee, or any member or employe thereof, to any candidate for, or incumbent of any office or position under the constitution or laws, or under any ordinance of any town or municipality, of this state, or to any person at the request or for the advantage of all or any of them, any free pass or frank, or any privilege withheld from any person, for the traveling accommodation or transportation of any person or property, or the transmission of any message or communication."

The section just quoted was created over one hundred years ago to prevent the railroads and their employees from corrupting and influencing government officers and employees. The language of the section itself makes it clear that "traveling accommodations or transportation of any person or property" pertains to privately owned public carriers and does not include municipally owned parking ramps.

Further, art. XIII, sec. 11 states that no person, association, copartnership or corporation shall give free

passes or franks to any government employee. Here, the government officials gave the government employees the disputed privilege. The purpose of art. XIII, sec. 11 was to prevent corruption of public officials. There is no corruption in this case. No external pressure groups are involved in this matter so any fears of malignant influences acting upon the Dane county employees are groundless. Sec 59.07 (1) (Lm), Stats., does not violate art. XIII, sec. 11 of the Wisconsin Constitution.

The defendant's second constitutional attack is that sec. 59.07 (1) (Lm), Stats., violates the equal protection clause of the fourteenth amendment to the United States Constitution. He asserts that sec. 59.07 (1) (Lm) is unreasonable class legislation because the public is restricted from parking in a specific portion of the parking ramp. This, he contends, is a grant of special privileges to government employees which is of detriment to the taxpayer, especially since the county employee receives the privilege at a discount, *i.e.*, $13 per month instead of the $22 per month it would cost if he used the coin meters for a comparable period of time.

He also contends that the sole and original purpose of the parking ramp was to provide parking for the general public, and that the Dane county board's action in reserving the parking spaces for county employees works against the public interest.

In *State v. Duffy* (1972), 54 Wis. 2d 61, 65, 66, 194 N. W. 2d 624, we stated:

"Equal protection of the law is denied only where the legislature has made irrational or arbitrary classifications. *Town of Vanden Broek v. Reitz* (1971), 53 Wis. 2d 87, 191 N. W. 2d 913; *State ex rel. Johnson v. Cady* (1971), 50 Wis. 2d 540, 185 N. W. 2d 306; *State ex rel. Schopf v. Schubert* (1970), 45 Wis. 2d 644, 173 N. W. 2d 673. The test is not whether some inequality results from the classification, *Lindsley v. National Carbonic Gas Co.* (1911), 220 U. S. 61, 31 Sup. Ct. 337, 55 L. Ed. 369, but whether there exists any reasonable basis to

justify the classification. *McGowan v. Maryland* (1961), 366 U. S. 420, 81 Sup. Ct. 1101, 6 L. Ed. 2d 393. The instant case is not a situation involving criteria which is inherently 'suspect.' *See Graham v. Richardson* (1971), 403 U. S. 365, 91 Sup. Ct. 1848, 29 L. Ed. 2d 534."

In considering the constitutionality of a statute it is relevant to observe that legislative enactments are presumptively constitutional and that this court will sustain a statute against attack if there is any reasonable basis for the exercise of the legislative power. *State v. Starks* (1971), 51 Wis. 2d 256, 259, 186 N. W. 2d 245; *Watchmaking Examining Board v. Husar* (1971), 49 Wis. 2d 526, 531, 182 N. W. 2d 257. As regards the specific standards for examining the reasonableness of a statute's classifications, these are well expressed in *State ex rel. Real Estate Examining Board v. Gerhardt* (1968), 39 Wis. 2d 701, 710, 711, 159 N. W. 2d 622:

"Five standards for proper classification were promulgated by this court in *State ex rel. Ford Hopkins Co. v. Mayor,* and expanded in *State ex rel. Baer v. Milwaukee.* They are:

" ' " (1) All classification must be based upon substantial distinctions which make one class really different from another.

" ' " (2) The classification adopted must be germane to the purpose of the law.

" ' " (3) The classification must not be based upon existing circumstances only. [The following sentence was added to No. 3 by *State ex rel. Risch v. Trustees:* 'It must not be so constituted as to preclude addition to the numbers included within a class.']

" ' " (4) To whatever class a law may apply, it must apply equally to each member thereof.

" ' " . . .

" ' " (5) That the characteristics of each class should be so far different from those of other classes as to reasonably suggest at least the propriety, having regard to the public good, of substantially different legislation." ' "

The major question that arises out of the foregoing facts and discussion is whether sec. 18.03 of the Dane County Ordinances, plus the enabling statute, sec. 59.07 (1) (Lm), serve a public purpose by their existence.

In 2 McQuillin, *Municipal Corporations* (3d ed.), pp. 817, 818, sec. 10.31, the concept of public purpose as a limitation on the exercise of municipal powers is discussed:

"**Public purpose as limit of power.** Any power conferred on a municipality must be exercised for a public use or purpose as distinguished from a private purpose. Except as inhibited by specific constitutional provisions, the legislature has the power to determine what is a lawful municipal purpose and a public purpose with respect to which a municipality may exercise powers. Furthermore, the legislature may determine and declare what is not a public use or purpose. A municipal corporation is a public institution created to promote public, as distinguished from private, objects. All its powers, property and offices constitute a public trust to be administered by its authorities. What is a public use or purpose has given rise to much judicial consideration, and courts, as a rule, have attempted no judicial definition of a public as distinguished from a private purpose but have left each case to be determined by its own peculiar circumstances. The modern trend of the decisions is to extend the class of public uses or purposes in considering the municipal activities sought to be included therein. The fact that other purposes will also be served does not invalidate the exercise of a power conferred on a municipality even if such other purposes alone would not have justified an exercise of the power."

In *State ex rel. Warren v. Reuter* (1969), 44 Wis. 2d 201, 213, 170 N. W. 2d 790, this court, citing *State ex rel. Wisconsin Development Authority v. Dammann* (1938), 228 Wis. 147, 180, 277 N. W. 278, 280 N. W. 698, stated:

"The court recognized that the concept of public purpose is a fluid one and varies from time to time, from age to age, as the government and its people change. Essentially, public purpose depends upon what the people expect and want their government to do for the society

as a whole and in this growth of expectation, that which often starts as hope ends as entitlement. . . ."

By applying the standards set forth in *Gerhardt, supra,* we conclude that sec. 18.03 of the Dane County Ordinances, and sec. 59.07 (1) (Lm), Stats., do serve the public interest and do not violate the equal protection clause of the fourteenth amendment to the United States Constitution.

The classification of county employees as set forth in the ordinance defines a class that is readily identifiable and substantially different than the general public.

It is also clear that sec. 18.03, Dane County Ordinances, and sec. 59.07 (1) (Lm), Stats., are in accord with the purpose of the law, *i.e.,* the setting aside of county owned property for parking purposes.

The class of county employees entitled to the reserved parking stalls is not restricted to the group presently receiving the benefit. Under the terms of the collective bargaining agreement, all present employees who do not currently park in the reserved stalls and all future employees may be entitled to receive a parking space. The number of stalls is limited but the express number of county employees entitled to their use is potentially unlimited.

A superficial reading of the collective bargaining agreement makes it apparent that all members of the class of county employees are not treated equally. Clerical employees and senior employees are entitled to parking stalls before their nonclerical compatriots with less seniority. Obviously, the statute and ordinance as applied treat members of the class unequally.

In oral argument, counsel for respondent county of Dane stated that no county employee who desired reserved parking space was refused, *i.e.,* there was no waiting list. Therefore, he contends, there is no actual discrimination based on seniority within the class of

county employees. However, the record does not reflect the factual assertion and consequently cannot be heard or made use of by this court. The collective bargaining provision does treat county employees unequally.

While we cannot go beyond the record to obtain the facts (with exceptions not material here) when a statute or ordinance is challenged upon the ground it is unconstitutional as applied, the person making such challenge has the burden of proof to establish facts that demonstrate such unconstitutional application. The defendant has offered no evidence to show unequal treatment to members of the class parking in the restricted area under the authority of the ordinance. In the absence of such proof we presume there is no unconstitutional application.

There is another factor of controlling significance. This court has held that a person does not have standing to challenge the unequal protection afforded to members of a class unless he is a member of that class. *Scharping v. Johnson* (1966), 32 Wis. 2d 383, 395, 145 N. W. 2d 691; *State ex rel. Real Estate Examining Board v. Gerhardt, supra,* page 711. The defendant is not a county employee and therefore cannot assert the rights of a member of that class.

The fifth standard of *Gerhardt, supra,* considers the important concept of whether the ordinance and the enabling statute serve a public purpose. Here, the county has reserved 132 parking stalls out of a total of more than 1,000. The county board has decided that in order to ensure harmonious labor relations with the employees it will provide for reserved parking spaces for employees. The board could determine that it was reasonably necessary to have accessible nearby parking to ensure that the county employees were able to report for work on time. Harmonious labor relations and punctual performance of public duties do serve the public interest in a

sufficient degree so as not to offend the equal protection clause.

We believe the action of the county board in a constitutional sense is not arbitrary and that it is reasonable. It reserved only a relatively small fraction of the number of parking stalls available in the public parking facility. The county employees do not have an unlimited right to use the restricted area but only during working hours on working days. At all other times the public has an equal right to park in this area. Nor can it be said that $13 per month on a monthly basis as contrasted to $22 per month on a meter basis, if the stall is actually occupied, is unreasonable in any significant degree.

We conclude a public purpose is served and that the ordinance and statute are not otherwise unconstitutional.

*By the Court.*—Judgment affirmed.